## S. C. Kelley, Administrator of the Estate of Orville A. Kelley, deceased, Appellee, v. Illinois Central Railroad Company, Appellant.

1. RAILROADS—*section 2 of act with respect to "safety appliances on railroads" construed.* A disabled car, while being transported to a repair shop, for the sole purpose of being repaired, and while it remains in such shop for that purpose, is not used "in moving traffic" within the meaning of section 2 of the act of May 12, 1905, with respect to "safety appliances on railroads."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Reversed. Opinion filed March 18, 1908.

W. S. KENYON and W. W. BARR, for appellant; J. M. DICKINSON, of counsel.

FRANK F. NOLEMAN and W. F. BUNDY, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in case, in the Circuit Court of Marion county, by appellee against appellant, to recover damages resulting from the death of appellee's intestate, alleged to have been caused by a violation on the part of appellant of the statute concerning automatic couplers. Trial by jury. Verdict and judgment in favor of appellee for $2,250.

The suit is based upon sections 2 and 9 of the Act of May 12, 1905, with respect to "safety appliances on railroads." Section 2 is as follows: "That from and after the passage of this act it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any locomotive, tender, car or similar vehicle used in moving state traffic not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 9 relieves an employe who may be injured by any train, locomotive, tender, car or similar vehicle in use contrary to the provisions of the Act, from assumed risk and contributory negligence, because of continuing in the employment of such common carrier or in the performance of his duties as such employe.

Counsel for appellee summarize their declaration, in their statement of the case, as follows: "The declaration charges that the defendant carelessly and negligently failed to equip certain of its cars with automatic couplers, which could be uncoupled without the necessity of men going in between the ends of the cars; that the defendant is a common carrier and engaged in moving traffic between points within this state, and that the said cars were used by the defendant in moving state traffic; that the deceased was a switchman in the yards at the city of Centralia; and that in the performance of his duty as such switchman he was obliged to go in between the ends of certain cars for the purpose of uncoupling the same, and that while so engaged he was instantly killed."

The controlling question in this case is, whether the cars causing the death of appellee's intestate were at the time being used in moving traffic on appellant's line, within the meaning of the statute. Were they at that time being used in moving state traffic?

Counsel for appellee in their statement say: Appellant "has a whole block of ground east of the express office and back of the hotel lying south of and adjacent to Broadway. The roundhouse and repair shops are in this block of ground east of the hotel building, leaving quite an open space, so far as buildings are concerned, between the roundhouse, repair shops and carpenter shops on the south and Broadway on the north. There are seven or eight repair tracks, numbered from 1 to 8 inclusive, which have stub ends coming up to Broadway and running south, connecting by lead tracks into other tracks and finally reconnecting south of the depot and hotel building with the

main track of the road. There is also a track commencing north of Broadway leading off from the east side of the main track, which runs south across Broadway and just immediately east of and alongside of the express office building, which, as it gets a little further down, acts as a lead track for some of these repair tracks, and finally curves around and connects with the main track south of the depot building, and is used as a passing track to take cars off of the repair track and put them into service, and for engines to pass through. The track is called Park track. The next track to the east is called East Park track, and leads off of Park track a little south of Broadway and back into it further south. The next one is called No. 1 repair track, and with the six or seven east of it are stub tracks ending at Broadway and leading south ending at the lead track. These repair tracks were used as tracks on which to repair bad order cars.''

Appellee's intestate was crushed between a box car and a coal car, while in the act of uncoupling them, on the evening of March 28, 1906. These two cars had long before then both become disabled and been sent into these repair yards to be repaired, the box car on January 28th, with a defective truck, and the coal car on March 18th, with draft timbers and center sills broken and the coupler and a portion of the draft timbers gone.

It was a part of the duty of the switching crew of which appellee's intestate was a member to go into these repair yards and take out the cars that had been repaired and place them onto the Park track so that they might be put into service, and to place the unrepaired cars on tracks where they could be properly repaired.

Four cars, among them the box car in question, had been repaired and marked O. K. These four cars were coupled together, the box car in question being at one end. Attached to this box car by means of a chain,

which would not couple automatically, was the unrepaired coal car in question, with two other unrepaired cars attached, thus making a string of seven cars. The four good order cars were to be placed on the Park track for service, and the three bad order cars to be placed on proper tracks for repairs, or to be moved to some other part of the repair yards, as an incident to their condition and purpose there. The switching crew backed this string of cars south on East Park track until they reached a point where, by means of a switch, they could turn in on Park track and shove the cars north "to a place where they designed to cut off the good order cars and leave them on Park track, thereby putting them into service." As they neared the place where they designed to cut off the good order cars, appellee's intestate approached the string of moving cars, went in between the box car and coal car in question for the purpose of uncoupling them, and was crushed and killed.

Giving to appellee the benefit of the most favorable view of what the evidence tends to prove that a disinterested reasonable mind could entertain, appellee failed to make a *prima facie* case. The trial court erred in refusing to direct the jury to find the defendant not guilty. The cars causing the injury complained of were not being "used in moving traffic" at the time of the injury. A disabled car, while being transported to a repair shop or repair yards, for the sole purpose of being repaired, and while it remains in such shop or yards solely for that purpose, and until it has been returned to a point where it may be "used in moving traffic," does not come within the meaning of the statute.

The judgment of the Circuit Court is reversed, and the court finds as ultimate facts, to be incorporated in the judgment, that appellant, the defendant in the Circuit Court, was not guilty of the negligence and violation of the statute charged in the declaration, nor of any part thereof, as in said declaration charged.

*Reversed.*